He's all right. Here you hear you hear you. This honorable appellate for the second judicial district now open or soon to adjourn. Please be seated. Apparently, you know what we had for breakfast. Okay. Thank you. Morning.  Can you see? Kimberly? All right, Mr. Lee, if you're prepared, you may proceed. Can you please record? My name is Harry Lee. I'm here on behalf of the plaintiff appellant, Melinda Freeman. Mr. Lee, there's one question before you get started so that we don't throw you off. We have a record generally of the second proceedings, but we do not have a record of the first proceedings or anything attached. We did see a letter indicating that both were requested. What happened to the first one? I really don't know. I received what I received, but I didn't make a request for both records. So you don't have it? No, I don't. That's the same question of counsel when... Yeah, no. No, I do not have it. So that would be a matter for the Winnebago County clerk to address if we needed to know what happened? I believe so, yes, Your Honor. Thank you. There are two rulings that led to the summary judgment in this case, and I'm sure Your Honors are aware. The first ruling was the motion in limine ruling made by the trial court, which barred plaintiff's sole expert, Dr. Philly Brown, from testifying as to the cardiology standard of care and also the modes of treatment that the cardiologist might have used in this case. We believe that was an abuse of discretion. Dr. Brown, a family medicine physician, was qualified to give causation testimony in this loss of chance case against a family medicine physician. Wasn't Dr. Brown's experience in that area really as a spectator? Because he didn't provide the treatment for heart events that a cardiologist would. He just observed what a patient was going through, correct? Well, no, no, I think that's... Did he prescribe modes of treatment? Well, what he did was he would... First of all, Dr. Brown was well familiar with cardiovascular disease and all of the consequences of untreated disease. But in his role as a primary care physician, when he referred any of his patients to the cardiologist, he remained involved in their care and treatment. He did testify in his evidence deposition that after the referral, he would be in touch with the cardiologist and would discuss the care and treatment that was to be provided to the patient. Does that make him an expert in cardiology? No, it doesn't make him an expert in cardiology, certainly not. But this, once again, this is a case against a family medicine physician. What it does provide is... Or what it does do is it qualifies him to testify as to the available modalities of treatment. Well, probably this is standard care for a primary care physician, correct? I mean, he could testify. Yes. But you still have approximate cause issue. I mean, a contractor can give testimony about what goes into a building, but that doesn't make him an architect to give an opinion about architectural defects in a plan, does it? How is it different? Well, in answer to your question regarding an architect, certainly that's true. But once again, I think you have to look very carefully at the testimony of Dr. Brown in this case and what his role was with respect to his patients once the referral was made to the cardiologist. And this was not simply a matter where he simply gave them a referral slip and said, here, you go to a cardiologist and he'll take care of things for you. He remains very involved in the care and treatment that was provided to his patients when that referral was made to the cardiologist. At times, he would recommend treatment because he, as a primary care physician, he knew his patients better than the cardiologist would. So a cardiologist might recommend a certain treatment and he might say, no, no, I think this treatment might be a preferable treatment for my client. So let me get this right. So he's a general practitioner, if you will, primary care physician. And he, maybe unlike most primary care physicians, stays very involved. So are you saying this case is different than a case where a general practitioner or primary care physician referred somebody and the general practitioner to expert at trial doesn't have this type of relationship? Yes. So you're saying this is what distinguishes this expert in primary care from another expert in primary care? Absolutely. Absolutely. That is what I'm saying. And what I'm comparing it to is the situation in Ayala versus Murad, a case which I'm very familiar with. In that case, you had an expert who was an OB, obstetrician, gynecologist, essentially testifying as to what a medical oncologist would do. And because of this particular expert's knowledge, because his collaboration with medical oncologists, and also because he monitored the reaction of the treatment provided by medical oncologists, that expert was found to be qualified to give causation testimony. And even, well, even if your physician is correct, number one, this is different than many family practitioner type situations because he did follow up with the cardiologist. And number two, he said that they should, that the doctor should have referred Mr. Freeman to a cardiologist. Either the failure to refer is the cause of death, and that one's going to be a stretch, or he has to have some knowledge of what the cardiologist would have done. And he said he had no idea what the cardiologist would have done for Mr. Freeman. Again, Your Honor, this is a loss of chance case. And I think you're stating an incorrect causation burden for the plaintiff in a loss of chance case. In a loss of chance case, the plaintiff must show that there are available modalities of treatment which could have made a difference in the outcome. That's the burden. So the question, I believe here, is whether Dr. Finley-Brown was capable of providing that type of testimony. It's almost exactly the type of testimony that Dr. Goldstein in the Ayala case provided. And it's the type of testimony that the appellate court in that case found was sufficient to qualify him to give that testimony. All right, Alex, even if I accept that, we have the next step. And that is defendant, doctor, did have a cardiologist who was going to testify that nothing was going to work because this person was a walking time-bound. There. So you have failure to refer cause, last, you know, lost cause. Well, I either call it lost cause or lost chance, but it's lost chance. But we have a cardiologist who's going to say there wasn't any lost chance. So what essentially you have is you've got conflicting testimony from experts. And shouldn't a jury resolve that question? The problem is that the cardiologist is going to testify to a specific issue. Question. Yes, question. We're all sick here, so you want to stay as far back as you can. Oh, you're okay, right? Okay, he's fine, so fine. He's going to testify that it isn't. And you've got a doctor who says, who candidly says in his depositions, I don't know what he would have done, but I know it could have helped. How is that going to work? I think what he did was he testified that, look, these are the available options. This is what a cardiologist could have done. Of course he can't say what a specific cardiologist would have done in this particular situation. Or what would have worked? He conceded below in the trial court that he could not offer an opinion to a reasonable degree of medical certainty that this or that mode of treatment would have prolonged his life, correct? Well, no, I think what we conceded was that he wasn't going to be testifying as to the standard of care for a cardiologist. And, again, this is a case against a family medicine physician, so he's testifying as to the standard of care with respect to a family medicine physician. Causation, I think, is a separate question. It is a separate question, and that's what the trial court said. You don't have an expert on proximate cause. There was a gap in the case. That's what the court said, and then the reason the court said that is because the court struck the causation testimony. So now we go to the main issue. I'm sorry, Your Honor. Okay. What I'm saying is the court should not have struck the causation testimony from Dr. Finley Brown. With that causation testimony, there no longer is a gap in that testimony. And what precisely would that causation testimony, in your understanding, what would it have been? The causation testimony was that knowing cardiovascular disease, knowing how it's treated, having this interaction with cardiologists, and seeing the results of the treatment because I get the patients back, Dr. Finley Brown's testimony was actually, these are the available modalities of treatment. Now, again, he couldn't say what treatment a particular cardiologist would have selected, but he didn't need to say that. He said, these are the available treatments. This is everything that is possible that could have been done by a cardiologist. And that would have referred to what he understood the issue to be cardiomyology or whatever? It was the enlarged heart and there was a severe coronary artery disease. It was both of those. By the way, both of those conditions were conditions that Dr. Finley Brown had diagnosed and treated in his practice as a family medicine physician. So certainly he was very familiar with those particular conditions. Could he have offered an opinion to a reasonable degree of medical certainty that any specific treatment would have prolonged Mr. Freeman's life? He could have prolonged. Not would, but could have. And he had a loss of chance versus the causation burden that the trial court placed on him. So, I mean, it's critical to understand this case as a loss of chance case. Even in a loss of chance case, you still have to have a link. You do, absolutely. You absolutely need causation testimony. But again, it's a different causation testimony. So he, but then to answer my question, he would have testified that based upon his experience, reasonable degree of medical certainty, Mr. Freeman could have been referred to a cardiologist who could have done bypass surgery, angioplasty, step placement, or lipid-lowering medications. One of those four, or all of those four. And that would have prolonged his life. He also mentioned some additional testing. I think there was a stress test. That's testing. We're talking treatment. I know, I know, Your Honor. I know. But yes, though, that would have been, actually, I think when he was asked what the available options were for his evidence deposition, he said the available treatment options would have been either the angioplasty with stent placement or the bypass. I think those were the two options that he identified. When you stepped up, you said there were two issues. Do you want to move to the second one? Certainly. I think we discussed the second issue considerably in our briefs. In our briefs, of course, we started off with that issue and we moved on to this issue that I addressed right here. The first issue was the misapplication of Supreme Court Rule 219E to this case. Basically, the problem with the application of 219E to this case is that there was no indication of any attempt to avoid compliance with any discovery, deadline, rule, or order in this case. What occurred in this case was, of course, the trial court ruled, as the court did on the motion to eliminate, and then struck the causation testimony. It was after that that a voluntary dismissal was taken. So that was the basis for the voluntary dismissal. It was not an attempt to avoid compliance. All the cases that I've seen that are out there indicate that there must be some indication of misconduct or of some sort of discovery violation, which provided the basis for the application of Supreme Court Rule 219E. So 219E simply did not apply to this situation. Maybe 219E as a sanction didn't apply, but isn't there some authority that indicates that, upon refiling, the court has an obligation to look at what occurred in the first matter, and that usually, not all the time, but usually involves looking at all previous orders and importing them into the second proceedings, unless there is a good reason. I don't think that the court would have that authority under 219E. No, I'm saying if it did not apply, the court has an obligation independent of 219E when there is a refiling to look at what happened in the first case. Absolutely. Absolutely. And so why would it have been any different if the court followed that particular process as opposed to invoking 219E? Because, in effect, what the court did here by ruling as it did, by adopting the prior orders and by barring the plaintiff from naming an additional expert who could have comported with the trial court's motion to eliminate ruling, the court, in effect, rendered the right to refile meaningless in this case. It was absolutely meaningless. Why was the plaintiff even there with such a ruling? Well, see, that's another issue that I don't think really was well covered. What's the purpose of this voluntary dismissal and then the right to refile? You know, I can find that information, but it's not my job to find it. It's your job to provide it. And if the purpose is to allow this issue to go forward, it would seem that there should be some authority cited to the court that could help us. Well, you know, I think we cited all the authority that's there. As it applies to 219E. As it applies to 219E, right. Correct. As I said, this might be outside of 219E. Well, you know, but I think that there's absolutely case law out there regarding the purpose of discovery sanctions and purpose of managing discovery. And when you're talking about managing discovery, which I believe is what the court is addressing here in the refiled action, does managing discovery mean denying discovery? Because that, in effect, is what the trial judge did here. The trial judge denied discovery. Were there specific orders for... There were orders for compliance with 213, correct? Timely disclosure of experts in the case? Well, we did. Timely disclose. And Dr. Brown was the... He was timely disclosed. He was the expert. Yes, he was the expert. And when was the first objection to Dr. Brown's testimony? The expert testimony. Well, the expert testimony was, I believe, the objection occurred during the evidence deposition. Well, hadn't the trial court ruled prior to that? Well, the trial court... Let me back up a day before. The point is that you certainly knew, plaintiffs certainly knew, before the deposition, there were going to be problems raised by the defense with Dr. Brown's causation opinions, correct? That's correct. And that was the day... I believe it was the day before, Your Honor. I think the day before, and then I think the court moved on to... The 11th, the 14th, and then the 15th. So it was a short window, but in a situation like that, you've got to scramble and find an expert. Well, the plaintiff certainly could have done... The plaintiff may have been able to do something else, but the plaintiff also had a right to take a voluntary dismissal. So, I mean, the plaintiff exercised something that... She exercised something that she had a right to exercise. And there was no challenge, necessarily, to that request for a voluntary dismissal? No. Were there costs imposed or things of that nature? None whatsoever, Your Honor. Nothing. And that would seem to indicate that everybody knew it was going to be refiled, correct? Yes. Yes, Your Honor. You'll have an opportunity to reply, sir. Thank you, Your Honor. Thank you. Thanks, Kiernan. As may it please the court, I represent Dr. Gail Craze. And if I may, I'd like to start by addressing the last issue that was raised, the propriety of the judge's ruling when the case was refiled, pursuant to Rule 219E. We do not believe that the trial court at all misconstrued or misapplied Rule 219E. As you observe, there's nothing in the rule nor in the comments that in any way suggest that the plaintiff must be sanctioned before the case is dismissed or that the defendant must oppose a motion to voluntarily dismiss. Or that any of that is a prerequisite to the court doing what the rule says it must do when a case is voluntarily dismissed and then refiled. Well, how was this refiling and then submitting an expert in the second case, the 2016 case, how was it an effort to avoid compliance with discovery deadlines, orders, or applicable rules? Well, I think we look at the chronology of what happened. First of all, Ms. Freeman had five bites of the expert apple with Dr. Brown during the original case. She disclosed his opinions and then she supplemented his opinions pursuant to answers to interrogatories four more times. She disclosed additional opinions during two discovery depositions and that is the trial court found when he made rulings on what the scope of Dr. Brown's testimony should be at a pretrial conference, the plaintiff went ahead and took his evidence deposition and he disclosed even more opinions. So he's not entitled to expand on his opinions or he's not entitled to attempt to refine his opinions? Yes. As the case goes forward? Within, there was a ruling at I believe the pretrial conference on the permissible scope of Dr. Brown's testimony and it is incorrect to say that he was barred from testifying. He was allowed to give the opinions of a general practitioner as to what Dr. Preys reasonably should have done as a general practitioner when she saw Mr. Freeman on two occasions. Dr. Brown says she should have referred him to a cardiologist as he would have done. So that testimony was going to come in. At the pretrial conference the trial court actually voiced its concern that given Dr. Brown's qualifications plaintiffs might have difficulty proving medical causation. Then we go to the evidence deposition of Dr. Brown. He discloses some new opinions that had not been disclosed. And, let me back up, there was a motion in limine brought by a plaintiff at the pretrial conference and the plaintiff What motion in limine to bar what? I'm sorry. To limit what? The defendant. I'm sorry. To bar Dr. Brown from testifying as to what a reasonable cardiologist would have done with Mr. Freeman. So, but then the trial court in motion in limine barred him entirely. No. No, your honor. The motion was to bar his testimony as to what a reasonable cardiologist would do and the plaintiff's response was actually no objection Dr. Brown is not a cardiologist so he's not going to go there. So that was fine. Then the plaintiff brought a motion in limine to bar all undisclosed opinion testimony. Granted. Going to the evidence deposition more undisclosed opinions they're really collateral opinions were disclosed but the trial court found that the plaintiff's counsel actually asked Dr. Brown what would a reasonable cardiologist do? So that was stricken. Well, stricken basically because he said he didn't know. Correct. Or it went beyond um at least I mean it seems the obvious reason it was stricken is because he said I don't know. Correct. Well there depending on the questions and how you read but then we move to the first day of trial now the jury is selected um and that is when they went over the evidence deposition again and the trial court you know went through this is what I'm not going to allow Dr. Brown to testify to. But why? Did the trial court ever go through a process of why other than I've issued these orders in the other case the 2014 case I've adopted them here and that's the end of the discussion. Well that is the exact language in the discussion of counsel in the court is in the briefs but here are the main points. Um it was clear from Dr. Freeman's testimony that there is no standard protocol for treating cardiac patients. It's not like the two cases um one was Aiello that was referenced and there's another one Heminger versus May those were cancer cases and the doctor said I'm not an oncologist but there's only two treatments for this radiation and chemo that's the standard and if you look at you know the American Cancer Society and other statistics it will tell you exactly what the likely percentage of recovery is if you get those drugs at a certain time. There's no standard here. There's a laundry list that Dr. Brown had of the possible treatments for these cardiac issues. Um and he did not know what treatment if any an actual cardiologist would provide for Mr. Freeman. And he can't say that because he said 100% of the time if I get a patient like Mr. Freeman I have to refer him to a cardiologist because quote I do not have the skill training or knowledge to do a cardiac workup and um it was for a cardiologist to decide what treatment Mr. Freeman should have if any. So then he he met the the first prong that Dr. uh Craze violated the standard of care not referring to a cardiologist. He was going to be allowed to testify to that, yes. Uh but he couldn't then he can't tell us what's going to happen to Mr. Freeman. I don't know how he's going to be treated. I would never make that decision and in fact he says himself Mr. Freeman's condition may have been too far along for some treatment plans. So he couldn't testify and this is what the trial court you know seized upon and what is appropriately seized upon is that Mr. Freeman he couldn't say Dr. Brown couldn't say whether or not any particular treatment or combination of treatments would have helped Mr. Freeman. That's causation. On that day on that day of trial the trial judge makes a final determination that you're going to need something else. And I think he says something like I read and re-read and looked at these things and I can't get there from here. I'm paraphrasing the last part but the read and re-read he said several times. So at that point we have a request for voluntary dismissal. Correct and I would just like to point out I think it validates the trial court's conclusion that the only reason for the voluntary dismissal was to avoid the consequences of that order limiting what the scope of Dr. Brown's allowable causation testimony would be. But that order had not been definitively entered before that time had it? Never boom this is what you're not going to go there. There had been suggestions but there had never been no. There had been various rulings on what Dr. Brown could and could not testify to but this was he cannot say you know I'm not going to let him testify to what the cardiologist would have done or what the effectiveness of the treatment if any would have been and I think it's noteworthy that the plaintiff did not at that point say judge all right would you please give me leave to have a new expert. Well we have a jury sitting there. We have a jury sitting there. Well but I would say it never that never happened and because there's another remedy that you could have objected to not you maybe not you personally if you weren't there but there could have been an involuntary dismissal. Well judge I think that what you there's an unfettered right according to the mail on summary court to have to take a voluntary dismissal. You may not have been successful but you could have made your position. No. Or you could have asked that it be dismissed with prejudice. But there was a right to have the voluntary dismissal. I don't think there's anything in the rule that says because you didn't ask for sanctions you need to ask for sanctions before you can get transferred this is why I'm having why I'm asking these questions. I think there is a time and a place to object to that voluntary dismissal. And it would be at the time that it's being taken. I don't know that you would have been successful but you might have garnered a couple of dollars in fees if the point had been pressed because that is one of the things that a judge can do upon a voluntary dismissal. The fact that you didn't again leads me to believe you knew this case was going to be refiled or your client knew this case was going to be refiled. The question was when. So then what you're doing is you're kind of bootstrapping your argument for, well this is what happened. You're bootstrapping it into the 219E as did the judge. Because this in the new case nothing inappropriate that happened. It's just been refiled which is their right. That was their right but it is not only the judge's right but also the requirement that the trial judge if he's looking at Rule 219E it says in the case of Morrison v. Wagner says judge you have to look at the entire case history and all the discovery that was done and all the discovery orders that you entered which included in this case extending and extending and extending the deadlines for Dr. Brown to supplement his opinions. You need to look at all that and then you decide what is appropriate discovery and it does give the judge the discretion to limit new witnesses that happen. Even when it's based upon an evidentiary ruling at the last minute? That's what happened here. I believe so judge. I mean this plaintiff had as the judge this judge said five years to figure out causation and in fact moved in Lemonade to limit and bar all undisclosed experts and testimony and then you get an unfavorable ruling which the judge had been trying to signal I think for quite some time and then and then you just voluntarily dismiss your case and want to get an entire do-over as the the trial court said and he said given the five years and all the discovery that's happened I'm not going to allow that and Dr. Krays is entitled to you know her trial so we're ready for trial let's go Did the trial judge find that the action of the plaintiff was in bad faith? He did not say it was sanctionable he said this was done for the sole purpose of avoiding the consequences of my orders and one was you know his discovery deadlines that had been in the first case and then also his order limiting the opinion testimony of Dr. Brown There was no there was no he kept referring to Jones but in Jones there was withholding of information there was no withholding of information in this case was there? No Nothing bad had been done correct? Well the judge wasn't very happy that after his motion in limine rulings on the scope of Dr. Brown's evidence deposition that the plaintiff was actually in there trying to seek get the doctor to testify what a cardiologist would have done so there were there were issues The judge wasn't happy there were no sanctions because he's unhappy does that mean his reasoning is proper? I believe the judge's reasoning was proper here because he's trying to get fair to the plaintiff because the plaintiff had five years with Dr. Brown to develop their case they were warned that this was a possibility at the pretrial conference they didn't ask for this would have been before the jury before the trial they didn't ask for leave to have a new expert they just decided to do an end around the first case and and you know start from scratch in the second case which I don't think I think actually the rule 219E says you shouldn't be doing this should not be starting over from scratch you have to take into consideration all the discovery that was done before and where the case was and was it developed and here the judge said five years this should have been developed alright in that regard in Smith versus Pace so we'll just call it Pace because it's easier there are certain criteria that are suggested to be considered to determine if a new witness can be called even if there is a order as was here and you said that the judge didn't find any bad faith nobody and I think one of them is surprise I don't think anybody was surprised by a proffer of a new witness maybe not happy but that's different than surprise was there a prejudicial effect of that witness's testimony possibly because it may have affected your cardiologist testimony the nature of the witness's testimony everybody knew it was going to be a cardiologist and the one question that might be at issue is the diligence of the adverse party did the court consider any of those factors well I think diligence was certainly considered in the fact that the judge kept saying over and over this case has been going on for five years and every opportunity had been given for the parties to name experts that expert disclosure deadline had been continued multiple times were there objections to that yes there were and we do discuss that in the brief and so those were voiced and acknowledged yes but even over objections Mrs. Freeman continued to be allowed to supplement Dr. Brown's opinion and I mean it really was five times in discovery plus two times in the evidence deposition and you know the prejudice to Dr. Craze is she's in the case for five years and still can't get a resolution so I think it was dilatory conduct to wait until filing a second case to try to disclose a new expert when there have been five years to do it well from the date of the filing until the date of the dismissal how much time it passed I believe it the judge said five years and it's roughly 45 years so then from the time of when they came back in to try and file it how long was there after it was very it was short period rather short period so the fact that she was in the case for five years had nothing to do with not calling the cardiologist it was just a natural flow of the case no but I think the circuit court we did voice the objection we moved to set the case for trial immediately upon refiling and then a few months later filed a motion for summary judgment and if you would sum up your position we appreciate it yes Judge just with respect to Dr. Brown the standard for the loss of chance case is not that there can just be treatment options available that's not the standard it's axiomatic that for the for you to have a chance of survival before you can show that your chance was lost because of some negligence Dr. Brown was not the person in this case who could establish any chance of survival because he didn't know how a cardiologist would treat Mr. Freeman so the case is very distinguishable from Aiella and Heminger and I'd just like to point out that the cases Johnson vs. Engel and Weidenbach vs. Searle in fact Weidenbach had Dr. Brown in it those courts found exactly what the trial court found here it's just not good enough it's speculation for a doctor to say he should have had some treatment treatment sooner is better than treatment later that is not appropriate causation testimony that is that is a fatal causation gap that's what we had here summary judgment we believe was proper and we request  affirm the trial court's judgment Thank you Thank you Mr. Lee Just addressing the last point Let me ask one question Mr. Lee you've obviously done cases of this nature you said you're basically familiar with ILA Dr. Brown was rejected as a similar type of witness in the case prior to this were you aware of that in the case Weiden Rift Weiden Yeah that was a completely different situation and that was a case actually where he could not provide the causation testimony in that case that was like Aguilera Johnson Aren't we here though this is the causation issue Well the reason we're here the reason he's unable to present the causation testimony is because the trial court struck the causation testimony from his evidence deposition so there was causation testimony in his evidence deposition that's the difference between those cases and this case in those cases there was no causation testimony none of the experts in any of those three cases could provide the causation testimony here our witness Dr. Brown wanted did testify to causation in his evidence deposition however that testimony was stricken So this was a strategy that was engaged he according to you he could provide it but there was no guarantee the court would accept it especially when he said I don't know exactly what a cardiologist would have done because it's a pretty big leap Well again your honor I think the use of the word would as opposed to could here is really significant because we're once again we're talking about loss of chance here it's could not would and so the question is could could the treatment have been provided and could that treatment have led to a better outcome in this case that's loss of chance and I strongly disagree that Ayala is distinguishable from this case if you if you simply compare the basis for the court's ruling in Ayala to the testimony offered by Dr. Brown in this case it's a pretty close match I don't want to say it's the same but it is pretty darn close so I I think Ayala is pretty good authority for finding in this case that Dr. Brown was qualified and I don't want to take your time to find the would or could distinction in my notes I will look for it when I prepare the decision I don't want to take any more of your time so go on and make your point just a couple of minutes I may have misheard this there was no jury the jury was not selected in the initial case no okay then I did mishear that wait no I take that back I believe there was discussion that it had been it was not the jury was not selected the voluntary dismissal was taken in the case there was no jury selection in the case and you know talking about what the trial judge did in the refiled action you know there were alternatives that the court could have used short of denying the right to refile you know perhaps under Supreme Court Rule 201 the court would have had authority to assign cost or expenses for the additional experts deposition for the supplementation of the defendants experts I mean the court could have done other things short of essentially killing the case well according to the security the court was really concerned about the fact that this case had been prolonged had gone on however you want to describe it for about five years at that point and once again how much time is necessary to you know in a vernacular get your ducks in line well we believe we had our ducks in line we believed looking at the testimony of Dr. Brown that he was qualified to give the testimony that we needed on causation and we believed on the basis of Ayala vs. Muran that there was case authority for that sort of testimony how far down the road did that expert deposition prior to the jury trial I can't answer that question your honor I don't I mean was we're talking five years so was it in the first one or two years that your client was made aware that maybe this doctor couldn't testify on causation it was well down the road it was well down the road that we were made aware that that he could not testify that's I have I have nothing else to offer if the court has any further questions I'd simply ask that the court reverse the trial for further proceedings thank you your honor thank you folks we will review those factual issues that we've discussed here in the record we appreciate the argument here today we will take the matter under advisement and we will issue a decision in due course we will stand in recess to prepare for our next case thank you